UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| CURTIS TEMPLE,<br><br>                    Plaintiff,<br><br>    vs.<br><br>LAWRENCE ROBERTS, Assistant<br>Secretary of Indian Affairs, Department<br>of Interior, Bureau of Indian Affairs;<br>TIM LAPOINTE, Northern Plains<br>Regional Director, Department of<br>Interior, Bureau of Indian Affairs;<br>JOHN LONG, Acting Superintendent,<br>Pine Ridge Agency, Department of<br>Interior, Bureau of Indian Affairs;<br>LIONEL WESTON, Branch of Realty,<br>Pine Ridge Agency, Bureau of Indian<br>Affairs, Department of Interior,<br><br>                    Defendants. | CIV. 15-5062-JLV<br><br><br>ORDER |

**INTRODUCTION**

Plaintiff Curtis Temple initiated this action in response to federal officials impounding his livestock in 2015 and 2016. After three years of litigation, the court ordered plaintiff to file a second amended complaint. (Docket 147). Now pending before the court is defendants' motion to dismiss portions of the second amended complaint. (Docket 153). Defendants also ask the court to dismiss the complaint against them and substitute the agency or the United States as defendant. (Docket 154). Plaintiff opposes both motions. (Docket 159). The court grants defendants' motion to dismiss in part and denies it in part. The court denies defendants' motion to substitute parties.

## I. Facts

The court summarized the facts of this case in a previous order. (Docket 55 at pp. 2-10).[1] The Oglala Sioux Tribal Court recently entered an order making extensive factual findings in plaintiff's related tribal cases.[2] (Docket 180-1 at pp. 2-13). The court will refer to these facts and others as necessary in this order, but declines to make new factual findings.

## II. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(1), a defendant has the right to challenge the "lack of subject-matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1). While considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court must "accept all factual allegations in the pleadings as true and view them in the light most favorable to the nonmoving party." Great Rivers Habitat All. v. Fed. Emergency Mgmt. Agency, 615 F.3d 985, 988 (8th Cir. 2010). The court "has authority to consider matters outside the pleadings when subject matter jurisdiction is challenged under Rule 12(b)(1)." Harris v. P.A.M. Transp., Inc., 339 F.3d 635, 637 n.4 (8th Cir. 2003) (internal quotation omitted). "The burden of proving federal court jurisdiction is on the party seeking to invoke federal jurisdiction." Mitchael v. Colvin, 809 F.3d 1050, 1053 (8th Cir. 2016) (citing Great Rivers, 615 F.3d at 988).

---

[1]The court's prior order in this case is available as a published opinion. See Temple v. Her Many Horses, 163 F. Supp. 3d 602 (D.S.D. 2016).

[2]The court takes judicial notice of the Tribal Court's order. Fed. R. Civ. P. 201(b)(2).

### III.     Motion to Dismiss

Defendants ask the court to dismiss portions of plaintiff's second amended complaint on two grounds.   First, they assert plaintiff failed to exhaust his administrative remedies regarding some of his claims.   (Docket 155 at pp. 4-15). Second, they argue some of plaintiff's claims should be stricken because they contravene the court's prior orders dismissing pre-impoundment and damage calculation claims.   Id. at pp. 17-19.   In response to the administrative exhaustion argument, plaintiff asserts he has two pending appeals before the Interior Board of Indian Appeals ("IBIA") related to his federal claims and that the exhaustion requirement does not apply.   (Docket 159 at pp. 2-7).   Plaintiff also argues his second amended complaint does not violate the court's prior orders outlining the scope of this litigation.   Id. at pp. 7-9.

At the outset, the court notes the parties do not agree on which Federal Rule of Civil Procedure governs this motion.   Defendants characterize their motion as one seeking to dismiss for lack of subject matter jurisdiction, which falls under Rule 12(b)(1).   (Docket 115 at p. 3).   But they also cite the Rule 12(b)(6) standard in case "the court views the motion to dismiss" under that Rule.   Id. at p. 4.   Plaintiff cites only the Rule 12(b)(6) standard.   (Docket 159 at pp. 1-2).

Rule 12(b)(1) governs this motion because defendants allege the court lacks subject matter jurisdiction over plaintiff's unexhausted claims.   Plaintiff's claims against defendants—who are all agents of the United States—may

3

proceed only if the United States has waived its sovereign immunity. <u>Great Rivers</u>, 615 F.3d at 988. The court previously held plaintiff's claims could proceed under the Administrative Procedures Act ("APA"). (Docket 55 at pp. 16-27). The APA requires exhaustion "only when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." <u>Darby v. Cisneros</u>, 509 U.S. 137, 154 (1993). Department of Interior ("Interior") and Bureau of Indian Affairs ("BIA") regulations state that "[n]o decision of a[] . . . BIA official that at the time of its rendition is subject to appeal to the [IBIA] will be considered final so as to constitute agency action subject to judicial review under" the APA. 43 C.F.R. § 4.314; <u>see</u> <u>also</u> 25 C.F.R. § 2.6 ("No decision, which at the time of its rendition is subject to appeal . . . shall be considered final[.]"). Because Interior and BIA rules require exhaustion, the court concludes exhaustion is a prerequisite to proceeding under the APA's waiver of sovereign immunity. <u>See</u> <u>Estate of Sauser v. United States</u>, 171 F. Supp. 3d 947, 954 (D.S.D. 2016) (reaching same conclusion); <u>Crow Creek Sioux Tribe v. Bureau of Indians Affairs</u>, 463 F. Supp. 2d 964, 968 (D.S.D. 2006) (same). Whether plaintiff exhausted his administrative remedies is a jurisdictional inquiry properly evaluated under Rule 12(b)(1).

## A. Failure to exhaust administrative remedies

There is significant confusion in the parties' briefing about which claims are subject to exhaustion, which claims are currently on appeal to the IBIA, and

how these factors affect the court's jurisdiction.   Some of this confusion can be traced to the court's order granting in part and denying in part defendants' first motion to dismiss, which exempted some of plaintiff's claims related to the impoundment of his livestock from the administrative exhaustion requirement.[3] (Docket 55 at pp. 16-27).   Plaintiff nevertheless proceeded to administratively appeal the impoundment claims the court found to be exempt from exhaustion. The court determines it is appropriate to stay plaintiff's impoundment and impoundment-related claims pending resolution of the administrative appeal process.   However, the court concludes dismissing plaintiff's public sale and land survey claims for lack of exhaustion is warranted.

### 1.   Impoundment claims

The court previously held plaintiff's "Fifth Amendment due process claims relating to the impoundment of his cattle" and his "APA claim stemming from the impoundment" were exempt from the exhaustion requirement.   Id. at pp. 23, 26.   This order, filed on February 19, 2016, only addressed the 2015 impoundment.   The 2016 impoundment did not occur until June 21, 2016. (Docket 152 at ¶ 37).   The court reasoned that impounding the livestock was a final agency action and that the nature of defendants' proposed actions—selling or slaughtering the cattle—weighed against requiring exhaustion, as defendants'

---

[3]No party asks the court to reconsider its earlier ruling on this topic. Under the law of the case doctrine, the court will continue to exempt some of plaintiff's claims from the exhaustion requirement.   See In re Tri-State Fin., LLC, 885 F.3d 528, 533 (8th Cir. 2018).

"ability to correct [their] mistake is necessarily limited[.]"   (Docket 55 at pp. 24-26).

Plaintiff is proceeding with administrative review of the impoundment decisions.   He asserts he is currently appealing the 2015 and 2016 impoundments.   (Dockets 152 at ¶¶ 24 & 33 & 159 at pp. 5-7).   Plaintiff did not provide the court with any information about the status of his IBIA appeals.   He states only that the appeals are "pending and ongoing."[4]   (Docket 159 at p. 3).

Considering the changed factual circumstances of this case and plaintiff's choice to proceed with the administrative appeal process, the court finds it is appropriate to stay consideration of the impoundment claims pending resolution of the IBIA appeals.   The court's February 19, 2016, order exempting plaintiff's impoundment claims from the exhaustion requirement was based at least in part on the gravity of the harm that would be inflicted on plaintiff if defendants sold or slaughtered his cattle.   (Docket 55 at pp. 24-26).   At that point, the court anticipated resolving plaintiff's claims prior to the sale or slaughter of his livestock.   That plan did not come to pass.   (Docket 147 at pp. 2-4) (explaining procedural delays).   Since the court's previous order, the BIA sold or slaughtered the cattle impounded in 2015 and plaintiff redeemed the cattle

---

[4]Defendants filed an affidavit in 2016 stating the IBIA consolidated plaintiff's two appeals on September 27, 2016.   (Docket 11 at ¶ 3).

impounded in 2016.[5]   (Dockets 118-1 at p. 2 & 118-2 at pp. 2-3).   The court's

concern about the harm to plaintiff stemming from the BIA's prolonged

impoundment of his livestock is now moot.

In addition, plaintiff's choice to administratively appeal the 2015 and 2016

impoundments weighs in favor of granting a stay to allow the appeal process to

conclude.

> The purpose of exhaustion is to prevent "premature interference
> with agency processes, so that the agency may function efficiently
> and so that it may have an opportunity to correct its own errors, to
> afford the parties and the court the benefit of its experience, and to
> complete a record which is adequate for judicial review."

Ace Property & Cas. Ins. Co. v. Federal Crop Ins. Co., 440 F.3d 992, 1001 (8th

Cir. 2006) (quoting Weinberger v. Salfi, 422 U.S. 749, 765 (1975)).   The

administrative record being developed before the IBIA will undoubtedly prove

useful in resolving plaintiff's impoundment claims, should the appeals be

decided adversely to plaintiff.   And, of course, it is entirely possible the IBIA will

grant plaintiff the relief he seeks, obviating this action.   The court finds the

reasoning behind the exhaustion requirement applies to this case.

However, the court does not agree with the government that dismissal of

the impoundment claims is appropriate in this situation.   Plaintiff has not failed

to exhaust his administrative remedies—he has simply not yet finished

---

[5]In a January 3, 2017 decision, the Pine Ridge Agency of the BIA stated
plaintiff redeemed the cattle impounded in 2016, but only picked up the "low risk
livestock," leaving 110 head of cattle in the BIA's possession.   (Docket 118-2 at
p. 2 n.3).   The court does not know if plaintiff is currently in possession of these
110 head of cattle.

exhausting them. The IBIA is the administrative tribunal of last resort with regard to claims against BIA action. 43 C.F.R. § 4.314. Plaintiff appealed the impoundments to the IBIA in 2016 and the appeals may be resolved in the near future.[6] Under these circumstances, it would be a waste of judicial resources to dismiss plaintiff's impoundment claims as unexhausted, only to force plaintiff to refile them if the IBIA rejects his appeals. It would also be unjust to dismiss plaintiff's impoundment claims for lack of exhaustion when the court refused to require him to exhaust his administrative remedies at the beginning of this litigation.

Accordingly, the court stays resolution of plaintiff's impoundment claims until the IBIA resolves his appeals.[7] The parties may move for summary judgment after the appeals are resolved.[8] At the summary judgment stage, the parties shall file the IBIA's decisions and the administrative record it relied on in resolving plaintiff's appeals. This holding applies to the first through seventh

---

[6]As of the date of this order, no party has informed the court that the IBIA has decided plaintiff's appeals. The IBIA's list of 2019 decisions does not include plaintiff's appeals. See U.S. Dep't. of Interior, Office of Hearings & Appeals, Cases Decided in Calendar Year 2019, available at https://www.doi.gov/oha/organization/ibia/cumulative-chronological-index-of -cases/cases-decided-in-calendar-year-2019 (last visited Sept. 6, 2019).

[7]The court has the ability to "stay[] further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling" under the doctrine of primary jurisdiction. United States v. Rice, 605 F.3d 473, 475 (8th Cir. 2010) (quoting Reiter v. Cooper, 5007 U.S. 258, 268 (1993)).

[8]The court will resolve the Oglala Sioux Tribe's motion to quash plaintiff's subpoena in due course. (Docket 172).

and twelfth claims of plaintiff's second amended complaint. (Docket 152 at ¶¶ 37-43, 48-51).

### 2. Other impoundment-related claims

Defendants claim plaintiff failed to exhaust his administrative remedies with regard to three distinct agency actions for each impoundment: the impoundment itself, the trespass finding, and the assessment of costs, damages and penalties. (Docket 155 at pp. 9-15). In response, plaintiff argues he was not required to separately appeal the BIA's trespass findings and monetary assessment. (Docket 159 at pp. 6-7). Plaintiff asserts only the IBIA can determine whether "certain claims have . . . been exhausted." Id. at p. 3. The court will not dismiss plaintiff's impoundment claims. See supra Section III.A.1.

Turning to plaintiff's challenge to the trespass findings, the court concludes his claims are inextricably bound with his impoundment appeal under BIA regulations and IBIA precedent. BIA regulations state that a trespass finding may not be administratively appealed. 25 C.F.R. § 166.803(c). In interpreting this regulation, the IBIA concluded "it has jurisdiction to review the finding of trespass and actions taken as a result of that finding, but does not have jurisdiction to review the actual trespass notice itself." Miller v. Rocky Mountain Reg'l. Dir., 39 IBIA 57, 60 (2003). The IBIA further noted that "a restriction on review of the finding of trespass or of actions based on that finding"—which appears to be the position defendants assert—would not be "either logical or in accordance with due process." Id. at 59.

9

Here, plaintiff is appealing actions "taken as a result" of a trespass finding—the 2015 and 2016 impoundment of his livestock. Id. at 60. Plaintiff is therefore also appealing the trespass notices and the IBIA has jurisdiction to review those claims. As with his impoundment claims, plaintiff did not fail to exhaust his trespass claims. The court will likewise stay consideration of plaintiff's trespass claims until the IBIA resolves his appeals. This ruling applies to the first, second, seventh and twelfth claims in plaintiff's second amended complaint. (Docket 152 at ¶¶ 37, 38, 43, 48-51).

Whether plaintiff exhausted his administrative remedies as to the BIA's assessment of costs, damages and penalties is a more difficult question. The Regional Director of the BIA's Great Plains Regional Office rejected plaintiff's attempt to appeal the monetary assessments as unripe on March 14, 2016, for the 2015 impoundment and on July 18, 2016, for the 2016 impoundment. (Dockets 100-1 at p. 2 & 100-3 at p. 1). The Regional Director informed plaintiff the appropriate time to appeal the assessments would be after the BIA issued a "final assessment and calculation of costs, penalties, and damages immediately following the time of redemption/public sale[.]" (Docket 100-1 at p. 2). Plaintiff appealed the Regional Director's decisions. (Dockets 100-2 & 100-4).

Plaintiff filed his notices of appeal on April 11, 2016, as to the 2015 impoundment and on August 15, 2016, as to the 2016 impoundment. (Dockets 100-2 & 100-4). Both notices of appeal indicated an intent to challenge the BIA's "[e]rroneous assessment and imposition of trespass damages" and asked

for "dismissal of the trespass charges and damages and penalties sought[.]" (Dockets 100-2 at p. 2 & 100-4 at p. 2).

The BIA issued its final assessments on September 28, 2016, for the 2015 impoundment and on January 3, 2017, for the 2016 impoundment. (Dockets 118-1 & 118-2). Plaintiff apparently did not appeal these final assessments. Plaintiff instead argues he was not required to appeal the final assessments because he appealed the Regional Director's dismissal of his assessment claim as unripe. (Docket 159 at p. 7). He asserts the issue is already before the IBIA and "another appeal was not required to be taken." Id.

Defendants correctly note the BIA issued its final monetary assessments to plaintiff regarding the 2015 and 2016 impoundments after he appealed those impoundments to the IBIA. (Docket 168 at p. 8). But they do not, in either their briefing or the administrative record presently before the court, cite any persuasive authority for the proposition that monetary assessments must be appealed only after they are "finalized," however that may be defined by the BIA.[9] No party pointed the court to an IBIA decision determining if a party may request its review of monetary penalties before the BIA issues a final assessment. It

---

[9]In fact, the Regional Director cited to the court's prior order when he informed plaintiff his assessment appeal was unripe. (Docket 100-1 at p. 2) (citing Docket 55 at p. 16). At that quoted page, the court stated plaintiff could appeal the assessments "after the livestock are redeemed or sold." (Docket 55 at p. 16). The court did not purport to establish when a trespass assessment is final for purposes of IBIA appeal.

Defendants also cite to case law discussing when agency action is final for purposes of APA review. (Docket 168 at p. 12). The analogy defendants attempt to draw is too general. The question of when a trespass assessment is final for purposes of IBIA review may be informed by different principles.

appears the IBIA will have the ability to answer this question if it chooses. See 43 C.F.R. § 4.318 (limiting the IBIA's review "to those issues that were . . . before the BIA official on review."); Dockets 100-1 at p. 2 & 100-3 at p. 1 (Regional Director discussing ripeness of plaintiff's challenges to monetary assessments). Given that plaintiff has evidently placed this question before the IBIA, the court finds it wise to wait for that tribunal to answer it before resolving the validity of the assessments.

The court cannot conclude plaintiff failed to exhaust his claims relating to the BIA's assessment of costs, damages and penalties for the 2015 and 2016 impoundments. These claims may be before the IBIA. The court will stay consideration of these claims until the IBIA resolves plaintiff's appeals. Should the IBIA refuse to consider plaintiff's assessment claims, the parties may wish to address the impact of that decision on the court's jurisdiction over those claims. This holding applies to the second, fifth, sixth, ninth and twelfth claims in plaintiff's second amended complaint. (Docket 152 at ¶¶ 38, 41, 42, 45, 48-51).

### 3. Public sale claim

Defendants also argue plaintiff failed to exhaust his administrative remedies with regard to his claim that the BIA improperly conducted the "public sale" of plaintiff's impounded livestock. (Docket 155 at pp. 6-7). In plaintiff's view, there "is no ground for interpretation" of the BIA's public livestock sale regulations. (Docket 159 at p. 4). He argues exhaustion is consequently not required. Id.

12

There is no indication plaintiff ever presented this claim to the BIA. The Regional Director's letters denying plaintiff's impoundment challenges do not mention it. (Dockets 100-1 & 100-3). Plaintiff's notices of appeal to the IBIA do not assert the claim. (Dockets 100-2 & 100-4). Plaintiff also does not argue he ever presented this claim to the BIA.

Instead, plaintiff asserts the regulation is so clear as to require no interpretation. (Docket 159 at p. 4). The regulation states:

> Unless the owner or known lien holder of the impounded livestock or other property redeems the property prior to the time set by the sale, by submitting proof of ownership and settling all obligations . . . , the property will be sold by public sale to the highest bidder.

25 C.F.R. § 166.811. The term public sale is not defined. Plaintiff, citing to Black's Law Dictionary, asserts public sale requires a public auction. (Docket 159 at p. 4).

The BIA did not conduct a public auction of the cattle from either impoundment. Instead, it sold the 2015 impounded livestock through a "sealed bidding sale process." (Docket 118-1 at p. 2). It attempted to sell the 2016 impounded livestock "by public sealed bids," but no one submitted bids and plaintiff redeemed the cattle before a second sale. (Docket 118-2 at pp. 2-3). The BIA alleged the use of a sealed bidding process was necessary in both cases because plaintiff threatened facilities the BIA attempted to use for public auctions with legal action. (Dockets 118-1 at p. 2 & 118-2 at p. 1).

The term public sale as used in the regulation does not indisputably foreclose the BIA's interpretation. The plain terms of the regulation do not

13

require an auction. Instead, the regulation requires the BIA to sell impounded livestock publicly to the highest bidder. 25 C.F.R. § 166.811. The court cannot say as a matter of law that the BIA failed to do so.

However, it appears the time to appeal the BIA's interpretation of the public sale regulation has long passed. An appellant must appeal BIA action within 30 days of receiving notice of the action. 25 C.F.R. § 2.9(a). Plaintiff no longer has an administrative remedy to exhaust with regard to his public sale claim.

In cases of administrative default, the Supreme Court requires courts to weigh "the harsh impact of the [exhaustion] doctrine when it is invoked to bar any judicial review" against "the interests in exhaustion[.]" McGee v. United States, 402 U.S. 479, 484 (1971). This inquiry "is not to be met by mechanical recitation of the broad interests usually served by the doctrine but rather should be assessed in light of a discrete analysis of the particular default in question[.]" Id. at 485. The court concludes this balancing test favors dismissing plaintiff's public sale claim for lack of exhaustion.

As noted above,

[t]he purpose of exhaustion is to prevent premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the court the benefit of its experience, and to complete a record which is adequate for judicial review.

Ace Property, 440 F.3d at 1001 (internal quotation omitted). Plaintiff's default means the court would not be interfering with BIA processes or foreclosing the

14

possibility of the BIA correcting its own errors if it set aside the exhaustion requirement. But plaintiff's "failure to exhaust did jeopardize the interest in full administrative fact gathering and utilization of agency expertise[.]" McGee, 402 U.S. at 486. There are substantial questions of fact surrounding the sale of plaintiff's impounded livestock, especially regarding whether his own actions forced the BIA to use the sealed bid process. In addition, the BIA has expertise in the interpretation and application of its own regulations, which would have been particularly helpful in resolving the public sale claim. Because plaintiff's public sale claim "raises . . . questions of fact and of interpretation of the [BIA's] own regulations[,] . . . it does serve a useful purpose to require full use of available administrative avenues of redress." United States v. Bisson, 839 F.2d 418, 420 (8th Cir. 1988) (affirming dismissal for lack of exhaustion).

Dismissing plaintiff's public sale claim for lack of exhaustion also works little injustice. The merits of the impoundments and the associated trespass findings and penalty assessments are before the IBIA and plaintiff will have the opportunity to seek review of the agency's findings in this court, if necessary. The public sale claim is a minor part of plaintiff's overall grievances. This is also not a case where plaintiff was unaware of the agency appeal process and the possible preclusive effect failing to exhaust could have on his ability to pursue the claim in federal court. Plaintiff "did not fully avail himself" of the BIA administrative appeal process "nor has he shown any good reason . . . for not having done so." Id. The court concludes dismissing the public sale claim for

failure to exhaust administrative remedies is warranted. This holding applies to the tenth claim in plaintiff's second amended complaint. (Docket 152 at ¶ 46).

### 4. Survey claim

In his second amended complaint, plaintiff alleges defendants "refused to conduct a survey to identify" land allotted to him.[10] Id. at ¶ 47. He also alleges defendants improperly lumped his personal allotted land in with the Tribal Range Management Program, depriving him of grazing rights to his land. Id. Defendants assert plaintiff failed to establish they were required to survey his land and that his claims related to the ownership of the land were already dismissed. (Docket 159 at p. 7). The court finds plaintiff did not administratively exhaust the survey claim.

A BIA regulation establishes a method plaintiff could have used to request official action, such as a land survey.[11] See 25 C.F.R. § 2.8. The regulation also expressly permits applicants to appeal BIA non-action on a request. Id. at § 2.8(b). The record contains no indication plaintiff ever requested a land survey through the applicable process. It appears plaintiff is raising this claim for the first time in federal court.

---

[10]Although plaintiff does not specify what he means when he uses the term allotted land, the court assumes he is referring to his "individually-owned Indian land," which is a term used in BIA regulations to refer to "any tract, or interest therein, in which the surface estate is owned by an individual Indian in trust or restricted status." 25 C.F.R. § 166.4.

[11]The court assumes without deciding there is some legal authority requiring or permitting the BIA to survey plaintiff's allotted land. Plaintiff did not cite any such authority in his second amended complaint or in his briefing on the present motions.

Unlike plaintiff's public sale claim, the administrative process remains open if he wishes to seek a land survey. The regulation contains no limit on when plaintiff may initiate a request. Id. at § 2.8. If the BIA declines to conduct a survey or fails to respond to plaintiff's request, he has the right to appeal the refusal or inaction. Id. at § 2.8(b). Under these circumstances, the court finds the "general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts" is in full effect. McCarthy v. Madigan, 503 U.S. 140, 144-45 (1992). The court accordingly dismisses plaintiff's survey claim for failure to exhaust his administrative remedies. This holding applies to the eleventh claim of plaintiff's second amended complaint. (Docket 152 at ¶ 47).

**B.      Previously dismissed claims**

In its February 19, 2016, order, the court dismissed plaintiff's claims relating to the Oglala Sioux Tribe's ("OST") and the BIA's pre-impoundment conduct. (Docket 55 at pp. 14-15). Plaintiff had alleged the OST and BIA improperly deprived him of grazing permits. (Docket 1). The court concluded plaintiff was required to exhaust his tribal remedies by litigating his pre-impoundment claims in the OST judiciary before raising them in federal court. (Docket 55 at p. 15). In that order, the court also dismissed plaintiff's claims regarding the BIA's assessment of trespass penalties for failure to exhaust his administrative remedies. Id. at pp. 15-16. Defendants now argue some of the claims in plaintiff's second amended complaint restate previously dismissed

17

claims.   (Docket 155 at pp. 15-19).   In response, plaintiff contends his pre-impoundment claims are related to BIA action, exempting them from the tribal exhaustion requirement, and that his penalty assessment claims are currently on appeal to the IBIA.   (Docket 159 at pp. 7-9).   The court again dismisses plaintiff's pre-impoundment claims but, as noted above, stays the assessment claims pending the resolution of plaintiff's IBIA appeals.

### 1.   Penalty assessment claims

Plaintiff has arguably placed his challenge to the BIA's assessment of costs, damages and penalties resulting from the 2015 and 2016 impoundments before the IBIA.   See supra Section III.A.2.   The IBIA may grant plaintiff the relief he seeks on the assessment claims.   If the IBIA decides the claims adversely to plaintiff, he will have then exhausted his administrative remedies and may seek review of those claims in this court.[12]   The primary jurisdiction doctrine permits the court to stay claims to allow for administrative exhaustion. See Rice, 605 F.3d at 475.   The court finds that approach appropriate here.

### 2.   Pre-impoundment claims

Plaintiff's second amended complaint asserts in its factual section the OST illegally vacated his leases to tribal grazing land.   (Docket 152 at ¶¶ 11-17, 19). Plaintiff's first, seventh and eleventh claims for relief also touch upon the ownership of certain plots of land and plaintiff's right to graze cattle on that land.

---

[12]As noted above, if the IBIA finds plaintiff waived or defaulted on his assessment claims, the parties may wish to argue what impact that default has on the court's jurisdiction over the claims.

Id. at ¶¶ 37, 43, 47.    Plaintiff argues these claims are related to federal action

because the BIA allegedly did not complete actions required to allow him to

contest the OST's decision to vacate his leases.    (Docket 159 at p. 8).    These

failures, in plaintiff's view, "are not matters that are . . . required to be

determined by the [OST]" and are thus not subject to tribal exhaustion.    Id.

The court adheres to its previous view that plaintiff's pre-impoundment claims

must be adjudicated in the OST courts.

The IBIA holds that "[a]llocation of grazing privileges is an intra-tribal

issue[.]"    Claymore et al. v. Great Plains Reg'l. Dir., 56 IBIA 246, 247 (2013).

> [The] BIA's act of issuing of permits in accordance with allocation
> decisions made by the tribe is a ministerial one.    Grazing
> allocations are made under tribal law, and BIA issues permits in
> accordance with decisions made by the tribe.    Therefore, as a
> general rule, neither the [IBIA] nor BIA has authority to order an
> allocation of grazing privileges in a manner inconsistent with the
> expressed wishes of an Indian tribe.

Id. at 253 (internal quotations and citations omitted).    "[A] tribe's authority to

reconsider its allocation of grazing privileges, and to determine whether eligibility

for tribal allocations may be challenged within the tribe, are questions of tribal

law appropriately resolved in a tribal forum."    Id. at 255.

Whatever actions the BIA may or may not have taken in regard to plaintiff's

grazing permits or leases were taken at the direction of the OST.    The court has

no authority to review those decisions or interpret OST law.    At this point in the

litigation, the court finds plaintiff has not stated any claim regarding the BIA's

pre-impoundment conduct that is not a function of OST law.    Plaintiff must

pursue his pre-impoundment claims in the OST courts.   See Colombe v. Rosebud Sioux Tribe, 747 F.3d 1020, 1024 (8th Cir. 2014) ("[A] federal court should stay its hand in order to give tribal forums the initial opportunity to determine cases involving questions of tribal authority.") (internal quotation omitted).

The court, taking judicial notice of the August 22, 2019, decision by the Oglala Sioux Tribal Court, also notes that serious issues regarding the indispensability of the OST in any federal suit regarding its grazing allocation decisions and its sovereign immunity would present themselves if plaintiff again brings his pre-impoundment claims to this court.   The Tribal Court ruled that the OST and its agencies "enjoy sovereign immunity from suit in tribal court" with regard to grazing lease disputes.   (Docket 180-1 at p. 23).   If plaintiff appeals the Tribal Court's ruling to the Oglala Sioux Nation Supreme Court and the ruling stands, he would face an uphill battle in convincing this court that the OST and its agencies may be sued regarding their pre-impoundment conduct.

The court concludes the first, seventh and eleventh claims of plaintiff's second amended complaint, to the extent they concern pre-impoundment conduct, should be dismissed for failure to exhaust tribal remedies.[13]

---

[13]The portion of plaintiff's first claim that challenges the BIA's 2015 impoundment is stayed pending the outcome of the IBIA appeals.   (Docket 152 at ¶ 37).   The portion of the claim asserting plaintiff is the "owner and user" of certain grazing land is dismissed.   Id.

## C. Negligence & money damages claims

Plaintiff's second amended complaint makes two references to defendants' alleged negligent conduct. (Docket 152 at ¶¶ 40-41) (asserting defendants negligently exposed plaintiff's impounded cattle to disease and increased impoundment costs). Defendants assert there is no liability for negligence in an APA action and that plaintiff should be required to bring all negligence claims in his companion Federal Tort Claims Act action.[14] (Docket 155 at pp. 20-22). Plaintiff did not respond to defendants' arguments on this topic.

Plaintiff also seeks "judgment for the value of the cattle impounded and amounts paid for redemption of other livestock." (Docket 152 at p. 13). Defendants argue this is an impermissible request for money damages, which are typically unavailable in an APA suit. (Docket 155 at pp. 21-22). Plaintiff responds that the relief sought is equitable and "cannot be construed as money damages." (Docket 159 at p. 9).

The court will not strike or dismiss plaintiff's references to negligence in the second amended complaint. The references appear to be more in the nature of inartful pleading rather than seriously asserted negligence claims. Plaintiff asserts all of his claims for relief involve "arbitrary and capricious" federal action "contrary to federal statutes and regulations" and "not in accordance with federal law." (Docket 152 at ¶ 36). Reading plaintiff's second amended complaint as a whole, plaintiff's claims asserting defendants' negligence in the impoundment

---

[14]The companion case is <u>Temple v. United States</u>, CIV. 17-5075.

process also assert defendants' actions were arbitrary and capricious and contrary to federal law—allegations squarely within the ambit of an APA action.

The court also declines to dismiss or strike plaintiff's request for "the value of the cattle impounded and amounts paid for redemption of other livestock." Id. at p. 13. It is premature at this stage of the litigation for the court to declare what remedies may or may not be available in the event plaintiff prevails. In any event, contrary to defendants' arguments, it is not at all clear that plaintiff's request is not cognizable under the APA as one for "money damages." 5 U.S.C. § 702.

> [The Supreme Court's] cases have long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with backpay, or for the recovery of specific property *or monies,* ejectment from land, or injunction either directing or restraining the defendant officer's actions. The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as "money damages."

Bowen v. Mass., 487 U.S. 879, 893 (1988) (discussing applicability of APA's refusal to waive sovereign immunity in suits for money damages) (internal quotations and citation omitted) (emphasis in original). Here, plaintiff is seeking "recovery of specific . . . monies" in the form of a refund for costs defendants' allegedly imposed on him contrary to law. Id. The court does not

foreclose the possibility that plaintiff's preferred remedy may be unavailable under the APA, but cannot dismiss his prayer for relief at this time.[15]

## IV.    Motion to Substitute Defendants

Defendants ask the court to substitute the United States, the BIA or the head of the BIA for the individual defendants currently named in this suit. (Docket 155 at pp. 22-23).   They assert plaintiff only sued defendants in their official capacity and the relief he seeks can only be awarded by defendants in their official capacity.   Id.   In response, plaintiff asks the court to allow him to amend his complaint to clarify he is suing defendants in their individual capacities as well as their official capacities.   (Docket 159 at pp. 9-10).

The court finds it would be premature to dismiss the named defendants but also concludes plaintiff has not demonstrated good cause to amend his complaint.   As defendants point out in their reply brief, plaintiff must demonstrate good cause pursuant to Federal Rule of Civil Procedure 16(b) to request leave to amend his complaint out of time.[16]   Fed. R. Civ. P. 16(b)(4); see also Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 714-18 (8th Cir. 2008) (describing "interplay between Rule 15(a) and Rule 16(b)" and the Rule 16(b)

---

[15]The court is also reluctant to declare any remedy unavailable at this stage of the litigation because the parties' briefing on this potentially crucial question was decidedly sparse.   If plaintiff prevails, he will have to clearly demonstrate to the court that the unusual step of forcing federal defendants to provide monetary relief in an APA case is warranted.

[16]The deadline to amend pleadings passed on November 30, 2016. (Docket 70 at ¶ 3).

good cause standard).    Plaintiff did not meet this burden.    The court cannot

permit him to amend the complaint to subject defendants to individual liability.

However, the court will not dismiss the possibility entirely that plaintiff

may succeed in demonstrating good cause to allege claims against defendants in

their individual capacity.    The record before the court on this point is paltry.[17]

The court will allow plaintiff the opportunity to file a properly supported motion

to amend his complaint.    Plaintiff must file his motion within 30 days of the IBIA

resolving his appeals.    If plaintiff chooses not to amend his complaint,

defendants may move again to substitute the agency or the United States in their

place.

## V.    Conclusion

The court summarizes its rulings on defendants' motion to dismiss as

follows:

1.    The court dismisses without prejudice the tenth and eleventh claims of plaintiff's second amended complaint for failure to exhaust administrative remedies.    See supra Sections III.A.3-4; Docket 152 at ¶¶ 46-47.

2.    The court dismisses without prejudice the first, seventh, and eleventh claims of plaintiff's second amended complaint for failure

---

[17]Plaintiff's request to amend his complaint consisted of three substantive sentences in his response brief and citations to an incorrect legal standard. (Docket 159 at pp. 9-10).    If plaintiff wishes to amend his complaint, he is referred to the authority cited above and this court's Local Rule 15.1.    See D.S.D. Civ. LR 15.1.    The court warns plaintiff his good cause argument will have to be exceedingly persuasive to justify wholly reshaping this litigation and delaying its resolution even further.

to exhaust tribal remedies.[18]   See supra Section III.B.2; Docket 152 at ¶¶ 37, 42, 47.

3.     The court stays the remainder of plaintiff's claims pertaining to impoundment conduct, trespass findings, and monetary assessments pending the resolution of the IBIA appeals.   See supra Sections III.A.1-2.

Because the court is staying resolution of all surviving claims until the IBIA resolves plaintiff's appeals, the court will stay the case as a whole.   The court also denies defendants' motion to substitute defendants without prejudice as premature.

The parties shall notify the court when the IBIA resolves plaintiff's appeals. At that point or before, the parties shall also confer as to a scheduling order that sets deadlines to finish discovery and file pretrial motions.   The parties shall also confer as to a trial date.   If the parties cannot reach agreement on a proposed schedule, they shall each submit proposed schedules with a brief explanation of the failure to agree and the court will set its own schedule.

## ORDER

For the reasons given above, it is

ORDERED that defendants' motion to dismiss (Docket 153) is granted in part and denied in part, as described in this order.

IT IS FURTHER ORDERED that defendants' motion to substitute parties (Docket 154) is denied.

---

[18]Plaintiff's first claim is dismissed only to the extent it alleges he is the proper owner and user of certain grazing land.   (Docket 152 at ¶ 37).   The portion of the claim challenging the impoundment and trespass finding survives.

IT IS FURTHER ORDERED that the parties shall promptly notify the court when the Interior Board of Indian Appeals resolves plaintiff's appeals numbered 16-061 and 16-099.

IT IS FURTHER ORDERED that this case is stayed until the Interior Board of Indian Appeals resolves plaintiff's appeals.

IT IS FURTHER ORDERED that the parties shall submit a proposed scheduling order, jointly or individually as appropriate, as described in this order after the Interior Board of Indian Appeals resolves plaintiff's appeals.

IT IS FURTHER ORDERED that plaintiff shall have 30 days from the date the Interior Board of Indian Appeals resolves his appeals to file in this court a motion to amend his complaint, if he so wishes.

Dated September 30, 2019.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE