UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| CURTIS TEMPLE,<br><br>    Plaintiff,<br><br>vs.<br><br>LAWRENCE ROBERTS, Assistant Secretary of Indian Affairs, Department of Interior, Bureau of Indian Affairs; TIM LAPOINTE, Northern Plains Regional Director, Department of Interior, Bureau of Indian Affairs; JOHN LONG, Acting Superintendent, Pine Ridge Agency, Department of Interior, Bureau of Indian Affairs; LIONEL WESTON, Branch of Realty, Pine Ridge Agency, Bureau of Indian Affairs, Department of Interior,<br><br>    Defendants. | CIV. 15-5062-JLV<br><br>ORDER |

**INTRODUCTION**

Plaintiff Curtis Temple brought this action in response to federal officials impounding his livestock in 2015 and 2016. The litigation is currently stayed pending the resolution of plaintiff's administrative appeals to the Interior Board of Indian Appeals. (Docket 183). Prior to the court's order staying the case, plaintiff issued subpoenas to Denise Mesteth and Jolene Provost. (Dockets 173-1 & 173-2). Ms. Mesteth and Ms. Provost, along with the Oglala Sioux Tribe ("OST") ("tribal movants"), entered an appearance in this case and moved to quash the subpoenas on the ground they infringe on the OST's sovereign immunity. (Dockets 172 & 174). Defendants take no position on the validity of the subpoenas but argue they seek inadmissible discovery. Plaintiff opposes

the motion to quash. (Docket 176). For the reasons given below, the court quashes plaintiff's subpoenas.

## I. Facts

The underlying facts in this case are set out in a previous order. Temple v. Her Many Horses, 163 F. Supp. 3d 602, 610-14 (D.S.D. 2016). The court only recites here the facts relevant to the motion to quash.

Ms. Mesteth served as the Director of the OST Land Office between June 19, 2006, and August 31, 2018. (Docket 177-1 at ¶ 11). In that capacity, Ms. Mesteth was an employee of the OST. Id. at ¶ 12. She was not an employee of the Bureau of Indian Affairs ("BIA"). Id. At some point after August 31, 2018, Ms. Mesteth obtained employment with the BIA as a Realty Specialist. (Docket 175 at p. 4). Ms. Provost is the Range Specialist of the OST Land Office and has served in that capacity since September 15, 1980. (Docket 177-1 at ¶¶ 5-6). She is an employee of the OST, not the BIA. Id. at ¶¶ 7, 10.

On May 7, 2019, plaintiff subpoenaed Ms. Mesteth and Ms. Provost, commanding them both to appear at depositions on May 20. (Dockets 173-1 & 173-2). Each subpoena also required Ms. Mesteth and Ms. Provost to bring the following documents to the deposition:

1. Written record of the source of your funding for your office from January 1, 2013, to the present.

2. Copies of all documents concerning and [sic] administrative appeal of any kind filed in your office by Curtis Temple from January 1, 2013, to the present regarding any decision of the Allocation Committee.

3. Correspondence from you [sic] office to the BIA and from the BIA to your office concerning any tribal or federal administrative appeal or lawsuit commenced by Curtis Temple from January 1, 2013, to the present.

4. All applications submitted by Curtis Temple to your office for a lease or grazing permit of tribal or allotted land from January 1, 2013, to the present.

5. Records of hearings and written determinations of your office on all applications submitted to your office by Curtis Temple for a lease or grazing permit of tribal or allotted land from January 1, 2013, to the present.

6. Copies of all tribal grazing ordinances in effect from January 1, 2013, to the present.

7. Any correspondence from your office to Curtis Temple from January 1, 203 [sic] to the present.

8. All decisions of the Executive Committee of any appeal filed by Curtis Temple from January 1, 2013, to the present.

9. Record of all allocations of grazing privileges or leases of land to Curtis Temple that were subsequently vacated for any reason by the Allocation Committee or Executive Committee from January 1, 2013, to the present.

The tribal movants moved to quash the subpoena on May 13. (Docket 172). In informal e-mail communication with the court, the parties agreed to postpone the depositions pending the court's ruling on the motion to quash.

## II. Legal Standard

Federal Rule of Civil Procedure 45 requires the court to quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" Fed. R. Civ. P. 45(d)(3)(A)(iii). "[A] federal court's third-party subpoena in private civil litigation is a 'suit' that is subject to Indian tribal immunity." Alltel Commc'ns, LLC v. DeJordy, 675 F.3d 1100, 1105 (8th

Cir. 2012). "[A]s a matter of federal law, the [OST] is subject to suit only if Congress has authorized the suit or the tribe has waived its immunity." Stanko v. Oglala Sioux Tribe, 916 F.3d 694, 696 (8th Cir. 2019).

### III. Analysis

The tribal movants argue DeJordy bars enforcement of plaintiff's subpoenas. (Docket 173 at pp. 6-7). They assert the OST has not waived its sovereign immunity for the purposes of this suit and the subpoenas are consequently unenforceable.[1] Id. at pp. 4-6. In response, plaintiff first asserts neither Ms. Mesteth nor Ms. Provost are tribal employees protected by the OST's sovereign immunity. (Docket 176 at p. 1). Plaintiff then attempts to distinguish DeJordy. Id. at pp. 2-3. The court agrees with the tribal movants, applies DeJordy and quashes the subpoenas.

The court first concludes plaintiff did not successfully establish that Ms. Mesteth and Ms. Provost are not tribal employees. Plaintiff baldly asserted both are BIA employees, but did not support his assertion with any evidence. (Docket 176 at p. 1). In contrast, the tribal movants submitted an affidavit from the OST's Human Resources Director establishing that Ms. Provost has been a tribal employee since at least 1980 and that Ms. Mesteth was a tribal employee

---

[1] The tribal movants also argue the subpoenas should be quashed because they seek discovery on matters dismissed from plaintiff's complaint and because they request material protected by the deliberative process privilege. (Docket 173 at p. 8). Because the court concludes the OST's sovereign immunity renders the subpoenas unenforceable, it does not reach the movants' alternative arguments.

4

between 2006 and 2018.[2]  (Docket 177-1).  The court finds Ms. Provost and Ms. Mesteth were tribal employees during the time period relevant to plaintiff's subpoenas.  OST employees acting in their official capacities are protected by the OST's sovereign immunity.  Stanko, 916 F.3d at 697.

Plaintiff next raises five separate arguments to distinguish DeJordy. (Docket 176 at pp. 2-3).  None are persuasive.  First, plaintiff argues DeJordy involved "discovery against the Tribe itself, which is not the case here."  Id. at p. 2.  Plaintiff misreads DeJordy.  That case involved third-party subpoenas against the OST and an OST official.  DeJordy, 675 F.3d at 1102.

Next, plaintiff contends DeJordy concerned "private civil litigation seeking money damages, not the case here as far as the Tribe is concerned."  (Docket 176 at p. 2).  DeJordy did not limit its holding to third-party subpoenas served in a suit seeking money damages as opposed to those served in other suits. Plaintiff provides no rationale for distinguishing DeJordy in cases not involving money damages and the court perceives none.  DeJordy turned on the concept of tribal sovereign immunity, which does not depend on the nature of the underlying suit.

Similarly, it does not matter if enforcing the subpoenas will "expend itself on the Tribe's treasury, interfere with its administration, or restrain the Tribe

---

[2]Ms. Mesteth is currently a BIA employee.  But plaintiff's subpoena clearly seeks information pertaining to her former role as an OST employee.  See Docket 173-1 at p. 2 (requesting correspondence between "your office" and the BIA and documents concerning plaintiff's applications "for a lease or grazing permit of tribal or allotted land.").  If plaintiff wishes to depose Ms. Mesteth on matters relating to her current job, the court reminds him that the allocation of OST grazing leases is not a part of this litigation.  (Docket 183 at pp. 18-20).

from acting[.]" Id.   Plaintiff selectively summarizes a Supreme Court case establishing a "general rule" for determining when "a suit is against the sovereign" for purposes of sovereign immunity analysis.   Dugan v. Rank, 372 U.S. 609, 620 (1963).   In full, the Supreme Court held:

> The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or *to compel it to act.*

Id. (emphasis added) (internal quotations and citations omitted).   Plaintiff's subpoenas would "command a government unit to appear in federal court and obey whatever judicial discovery commands may be forthcoming.   The potential for severe interference with government functions is apparent."   DeJordy, 675 F.3d at 1103.   Plaintiff cannot force the OST, through its officials, to act in response to his subpoenas.

Plaintiff next asserts he will inevitably depose Ms. Mesteth and Ms. Provost in his pending tribal litigation.   Id. at p. 3.   This is far from certain, as the Oglala Sioux Tribal Court ("Tribal Court") dismissed plaintiff's case in that court on the basis of tribal sovereign immunity.   Temple v. OST Allocation Comm. et al., Nos. CIV-13-0533, CIV-15-0333 & CIV-18-0038 (Oglala Sioux Tribal Ct. Aug. 22, 2019).[3]   In any event, whether OST law would permit plaintiff to depose Ms. Mesteth and Ms. Provost is a matter beyond this court's purview.   At most, this is an equitable or prudential argument for enforcing plaintiff's subpoenas.   But tribal sovereign immunity bars all suits, no matter their underpinning.   See Mich. v. Bay Mills Indian Cmty., 572 U.S. 782, 789 (2014) ("[A]ny suit against a

---

[3]The Tribal Court's order is filed at docket entry 180-1.

6

tribe" must be dismissed "absent congressional authorization (or a waiver)."). It is irrelevant whether plaintiff can depose the tribal movants under OST law; the court cannot enforce his deposition subpoenas under federal law.

Finally, plaintiff contends the OST waived its sovereign immunity. (Docket 176 at p. 3). He argues the tribal grazing code waives sovereign immunity by requiring grazing permit holders to "consent to the jurisdiction of the Oglala Sioux Tribe[.]" Id. Plaintiff goes on to argue the OST constitution "contains a Bill of Rights . . . . which prohibits tribal government from taking action that results in a denial of due process and equal protection." Id. In plaintiff's view, "[t]he courts are given the right to declare laws of the Tribe invalid if those laws are not in agreement with the Oglala Sioux Tribe Constitution." Id.

"A waiver of sovereign immunity may not be implied, but must be unequivocally expressed by either the Tribe or Congress." Amerind Risk Mgmt. Corp. v. Malaterre, 633 F.3d 680, 685 (8th Cir. 2011) (quoting Rupp v. Omaha Indian Tribe, 45 F.3d 1241, 1244 (8th Cir. 1995)). Plaintiff "bear[s] the burden of proving that either Congress or [the OST] has expressly and unequivocally waived tribal sovereign immunity." Id. at 685-86 (citation omitted).

Plaintiff did not show the OST waived its sovereign immunity and consented to participation in this litigation. In dismissing plaintiff's cases, the Tribal Court explicitly rejected the argument that the tribal grazing code waives the OST's sovereign immunity. Temple at pp. 18-21; see also Docket 180-1 at pp. 18-21. The court adopts the persuasive reasoning of the Tribal Court. As that court found, the text of the grazing code merely subjects grazing permit

7

holders to OST jurisdiction.  Id.  It does not subject the OST to suit in federal court.

As for plaintiff's argument that the court should imply a waiver of sovereign immunity from the OST's constitution, the court has absolutely no authority to do so.  "A waiver of sovereign immunity *may not be implied*[.]" Amerind, 633 F.3d at 685 (emphasis added).  Additionally, plaintiff does not explain what source of authority permits a federal court to interpret the OST's constitution and enforce it against tribal officials.  The court declines to interfere so heavily in the OST's internal affairs.

DeJordy squarely controls this dispute.  The court finds plaintiff's third-party subpoenas directed to Ms. Mesteth and Ms. Provost are suits that are barred by the OST's sovereign immunity.  Because the subpoenas would "require[] disclosure of . . . protected matter"—documents and information protected by the OST's sovereign immunity—the court must grant the tribal movant's motion to quash.  Fed. R. Civ. P. 45(d)(3)(A)(iii).

**ORDER**

For the above reasons, it is

ORDERED that the tribal movant's motion to quash (Docket 172) is granted.

IT IS FURTHER ORDERED that plaintiff's subpoenas of May 7, 2019, directed to Denise Mesteth and Jolene Provost are quashed.

Dated December 4, 2019.

BY THE COURT:
/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE